```
      CCOAMINI            SUPREME COURT - STATE OF NEW YORK      DATE: 04/16/2008
INDEX NO: 111292 2006           NEW YORK COUNTY CLERK           TIME: 12:42:28
PURCHASE: 08112006        CIVIL INDEX MINUTE BOOK INQUIRY


PLAINTIFF NAME: STEINHOFF MARGARET    DEFENDANT NAME: PFIZER INC
        ATTORNEY: RONALD R. BENJAMIN         ATTORNEY: UNKNOWN
                  126 RIVERSIDE DRIVE
                  BINGHAMTON, NEW YOR
                  1-607 772-1442
SEQ  DATE            MINUTES
0001 08112006        SUMMONS AND COMPLAINT


0001 09252006        ANSWER


0001 11142006        INTERROGATORIES


0001 03062008        DISMISSAL STIPULATION WITH PREJUDICE
                     AGAINST PFIZER DEFENDANTS



                        PAGE -   1
```



SE-3004R-100M92

# COUNTY CLERK, NEW YORK COUNTY

Application for INDEX NUMBER pursuant to Section 8018, C.P.L.R.

## FEE $210.00

Space below to be TYPED or PRINTED by applicant

## TITLE OF ACTION OR PROCEEDING

INDEX NUMBER

Do not write in this space

CHECK ONE

| | |
|---|---|
| ☐ COMMERCIAL ACTION | ☑ NOT COMMERCIAL ACTION |
| ☐ CONSUMER CREDIT TRANSACTION | ☑ NOT CONSUMER CREDIT TRANSACTION |
| ☐ THIRD PARTY ACTION | ☐ NOT THIRD PARTY ACTION |

Margaret Steinhoff et ux. Michael
Steinhoff,

                    Plaintiff,

    -vs-

Pfizer, Inc., Pharmacia Corporation, a
wholly-owned subsidiary of Pfizer, Inc.,
Pharmacia & Upjohn Company, a wholly-owned
subsidiary of Pharmacia Corporation, and
Merck & Co., Inc,

                    Defendants.

**IF THIRD PARTY ACTION
MAIN INDEX NO.** _____

06111292

Name and address of
Attorney for Plaintiff
or Petitioner.
Telephone No.

609-772

1442

Name and address of
Attorney for Defendant
or Respondent.
Telephone No.

A.   Nature and object of action or     Products liability
     Nature of special proceeding. _____

B.   Application for Index Number filed by:   Plaintiff ☑   Defendant ☐
C.   Was a previous Third Party Action filed   Yes ☐   No ☑
     Date filed

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

06111292

------------------------------------------------------------

MARGARET STEINHOFF, *et ux.* MICHAEL
STEINHOFF

      Plaintiff,

  -against-

PFIZER, INC., PHARMACIA CORPORATION, a
wholly-owned subsidiary of PFIZER, INC., and
PHARMACIA & UPJOHN COMPANY, a wholly-
owned subsidiary of PHARMACIA CORPORATION,
and MERCK & CO., INC.,

      Defendants.

------------------------------------------------------------

         **SUMMONS**

Plaintiff designates **New York County** as
place of trial based on defendants' principal
place of business.
Index No.:
Date Filed:

TO THE ABOVE NAMED DEFENDANT(S):

  YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's undersigned attorney within twenty (20) days after service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: August 2, 2006
   Binghamton, New York

Plaintiffs' residence is:
1 Piper Court, East Patchogue, New York 11772

Defendants' Addresses:
Pfizer Inc., 245 E. 42nd Street, New York, NY 10017-5755
Pharmacia Corporation, 100 Route 203, North Peapack, NJ 07977
Pharmacia & Upjohn Company, Tax Dept., 88-106, 7000 Portage Road, Kalamazoo, MI 49001.
Merck & Co., Inc., One Merck Drive, P.O. Box 100 WS3AB-05, Whitehouse Station, NJ 08889-0100

      *Ronald R Be*

      Ronald R. Benjamin, Esq.
      **LAW OFFICES OF RONALD R. BENJAMIN**
      Attorney for Plaintiff
      126 Riverside Drive
      P.O. Box 607
      Binghamton, New York 13902-0607
      (607) 772-1442

STATE OF NEW YORK: SUPREME COURT
COUNTY OF NEW YORK
‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒

MARGARET STEINHOFF, *et ux.* MICHAEL STEINHOFF,                     06111292

                              Plaintiffs,                    <u>COMPLAINT</u>

           -vs-                                              Index No. :

PFIZER, INC.,  PHARMACIA CORPORATION, a                      Date Filed:
wholly-owned subsidiary of PFIZER, INC., and
PHARMACIA & UPJOHN COMPANY, a wholly-owned
subsidiary of PHARMACIA CORPORATION, and
MERCK & CO, INC,

                              Defendants.

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒

       Plaintiffs, by and through counsel, the Law Office of Ronald R. Benjamin, allege upon

information and belief as follows:

       1.   Plaintiffs MARGARET STEINHOFF and MICHAEL STEINHOFF were and at all times

relevant herein are residents of and domiciled in the State of New York.

       2.   Upon information and belief, defendant PFIZER INC., is a Delaware corporation with its

principal place of business located at 235 East 42nd Street, New York, New York, and is authorized to

do and doing business in the State of New York with the county of its principal office registered as New

York County.

       3.   Upon information and belief, defendant PHARMACIA & UPJOHN COMPANY  is a

wholly-owned subsidiary of PHARMACIA CORPORATION, and at times relevant to this complaint,

each was a foreign corporation incorporated in the State of Delaware, and authorized to do business in

the State of New York, registered in or with its principal office located in New York County.

       4.   Upon information and belief, as the result of a corporate merger between Pfizer, Inc., and

Pharmacia Corporation in or about April 2004, Pharmacia Corporation which is a wholly-owned subsidiary of Pfizer, Inc., and, as a result thereof, Pfizer, Inc., is legally responsible for all obligations, debts and liabilities of Pharmacia Corporation and Pharmacia & Upjohn Company, and is the successor in interest and real party to Pharmacia Corporation and Pharmacia & Upjohn Company (hereafter collectively referred to as Pfizer or defendants).

5.    Upon information and belief, at all times relevant hereto defendant MERCK & CO. INC. (hereafter "Merck"), was and is a foreign corporation by virtue of being incorporated in New Jersey, and has its principal place of business at One Merck Drive, P.O. Box 100, WS3AB-05 Whitehouse Station, New Jersey 08889-01000, and is authorized to do business in the State of New York, with its registered principal office located at 111 Eighth Avenue, New York, NY 10011, in the County of New York.

6.    At all relevant times herein mentioned, the Pfizer defendants engaged in the design, manufacture, production, testing, study, research, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of their respective pharmaceutical products including the arthritis and acute pain medications celecoxib, brand name **CELEBREX**, which it placed on the market in or about 1999, and valdecoxib, brand name **BEXTRA**, which it placed on the market in or about March 2002 and removed or suspended from the market on or about April 7, 2005, for ultimate sale and/or use in the United States of America as well as in countries throughout the world.

7.    At all times herein mentioned and until withdrawing the same from the market in or about September 2004, defendant Merck was engaged in the design, manufacture, production, testing, study, research, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products including the arthritis and acute pain medication rofecoxib, brand name **VIOXX,**, which it placed on the market in or about 1999 and removed from the market on or about September 30, 2004, for ultimate sale and/or use in the United States of America as well as in countries throughout the world.

8.    The aforesaid drugs Celebrex, Bextra and Vioxx are in a class of drugs called COX-2 inhibitors, and work by selectively blocking a protein called COX-2 that has been linked to inflammation and pain.

9.    Upon information and belief, had each of the defendants carried out proper testing on their respective products, it would have realized the risks of its COX-2 inhibitor product included adverse cardiovascular events, including but not limited to heart attack, stroke and thromboembolism, and that the risks far outweighed any alleged benefits from the product.

10.    On or about January 6, 1999, through March 17, 2000, defendant Merck performed the Vioxx Gastrointestinal Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment with MK-0966 or Naproxen in Patients with Rheumatoid Arthritis: U.S. Cohort", which was submitted in conjunction with a supplemental New Drug Application (sNDA-007) on its gastrointestinal safety claim for rofecoxib.

11.    On or about December 16, 1999, the FDA warned Merck that it was using promotional pieces that "are false and misleading because they contain misrepresentations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

12.    On or about March 9, 2000, a Merck research chief reviewed unpublished findings from the VIGOR study and wrote an internal email stating that cardiovascular events "are clearly there" in the VIGOR study, and that the cardiovascular risk is "mechanism based as we worried it was", which, upon information and belief, meant the risks likely came from Vioxx, not the cardio-protective effects of naproxen.

13.    In or about June of 2000, industry-sponsored studies presented at the European United League Against Rheumatism, an organization in which Merck was and is a member and corporate sponsor, showed that Vioxx use resulted in a statistically significant increase in hypertension and stroke,

and thereafter, in August 2000, defendant Merck denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today.

14. In a study published in or about August 29, 2000, Proceedings of the National Academy of Sciences, it was reported that the ability of rabbits to withstand temporary experimental coronary artery occlusion (experimental heart attack) was significantly impaired by treatment with celecoxib (Celebrex), which completely blocked the cardioprotective effects of the COX-2 enzyme, and the study's authors concluded that the COX-2 enzyme is a cardioprotective protein, and thus, defendants knew or should have known that COX-2 inhibitors may neutralize the protective effects of COX-2 enzymes.

15. On or about August 29, 2001, an article published in the Journal of the American Medical Association reported that, using data from the VIGOR study and two other studies to calculate the relative risk of any thrombotic cardiovascular event with Vioxx and Celebrex, the annualized myocardial infarctions rate for COX-2 inhibitors is significantly higher than for placebos

16. Defendants continued to deny or warn about the risks to cardiovascular health associated with their respective COX-2 inhibitor drugs complained of herein while reaping profits and gaining market share through non-disclosure and concealment.

17. Upon information and belief, defendant Merck engaged in a massive advertising and sampling program and other tortious and intentional conduct complained of herein, including but not limited to:

(a) in November 2000, caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption;

(b) in its 2001 Annual Report, stated: "The Company believes that these lawsuits [alleging gastrointestinal bleeding and cardiovascular events] are completely without merit and will vigorously defend them";

(c) in its January 23, 2001 8-K filing with the Securities and Exchange Commission, did not mention and cardiac and cardiothrombotic findings of the VIGOR study;

(d) on or about May 22, 2001, and thereafter, issued a press release entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx" in which it states that "extensive review of data...have shown NO DIFFERENCE in the incidence of cardiovascular events, such as heart attack, among patients taking Vioxx";

(e) in a warning letter dated on or about September 17, 2001, was notified by the FDA that: "You have engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx. Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on the comparator nonsteroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen)"; and

(f) expended substantial sums of money for direct-to-consumer advertising, and in this regard expended approximately $78 million in direct-to-consumer advertising of Vioxx in 2003 and approximately $72 million in 2004 prior to the removal of this product from the market in September 2004.

18. Upon information and belief, the Pfizer defendants engaged in tortious and intentional conduct complained of herein, including but not limited to:

(a) refused to disclose unpublished data concerning Bextra (valdecoxib) that included an FDA Medical Officer's review indicating that the Coronary Artery Bypass Graft (CABG) Surgery study 035 demonstrated an excess of serious adverse events including death that warranted further investigation before the drug could be considered safe and effective, and expressing concerns about the excess of serious pro-thrombotic action in the Bextra arm of the study;

(b) continued to market Celebrex despite the conclusions of an expert of the FDA's Division of Cardio-Rental Drug Products indicating, among other things, that data from a CLASS study did "not exclude a less apparent pro-thrombotic [blood clot-forming] effect of celecoxib, reflected in the relative rates of cardiac adverse events related to ischemia";

(c) in, about or before 2002 and 2003, was aware of a clinical study whose initial results raised concerns of a higher risk for heart attacks in heart bypass surgery patients who took Bextra intravenously or orally based on the conclusion the incidence of heart attacks and strokes among patients given Bextra was more than double that of those given placebos, and made attempts to suppress or deny this information;

(d) expended substantial funds in direct-to- patient mail campaigns for Bextra, and, further, without proper and adequate testing, informed doctors that the problems with Bextra were not the same as the problems that caused the withdrawal of Vioxx from the market;

(e) expended substantial sums of money on direct-to-consumer advertising, including approximately $87.6 million in direct-to-consumer advertising of Celebrex in 2003 and a similar amount in 2004;

(f) in January 2005, was found in violation of law as a result of a review of five of Pfizer's direct-to-consumer television advertisements, mail brochure and infomercials by the Food and Drug Administration (FDA) Division of Drug Marketing, Advertising, and Communications, which determined the company was in violation of the Federal Food, Drug and Cosmetic Act and FDA's implementing regulations because that these "promotional pieces variously: omit facts, including the indication and risk information; fail to make adequate provision for the dissemination of the FDA-approved product labeling; and make misleading safety, unsubstantiated superiority, and unsubstantiated effectiveness claims";

(g) in or about January 2005, agreed to an FDA request to end all direct-to-consumer

advertisements for Celebrex after a national study found that high doses of the medication tripled a patient's risk for cardiovascular events;

(h) on or about April 7, 2005, removed or suspended Bextra from the market based on an FDA finding that there was inadequate information on possible heart risks from long-term use of the drug as well as life-threatening skin reactions, and also suspended sales of Bextra in the European Union at the request of European regulators; and

(i) in or about April 2005, was notified and directed by the FDA to place a stronger warning on Celebrex labels due to increased risk of cardiovascular events and gastrointestinal bleeding.

19. Upon information and belief, during the period of marketing each of the products, each of the defendants engaged in extensive advertising and promotional activity targeting the medical community and at patients directly which indicated, despite medical evidence to the contrary and their failure to properly and adequately test, that its respective COX-2 inhibitor drug was efficacious for treating certain conditions and that the same was safe to use, and published a description thereof in the Physician's Desk Reference for use by doctors in determining whether to prescribe said drug to patients, including plaintiffs.

20. Upon information and belief, each defendant used a wide range of marketing methods to promote the aforesaid products and place their respective products in the stream of commerce, including, but not limited to, sponsoring medical journals to promote the alleged benefits of its product, using sales representatives to call to on physicians throughout the country to encourage them to prescribe defendants' products, sponsoring continued medical education programs for the express purpose of promoting its product, hiring experts in the field to speak to physicians for purposes of promoting their products, by direct advertisements to consumers and end- users of the product, and by utilizing the media to promote the alleged benefits of the products.

21. Upon information and belief, defendants, through its agents, employees and representatives,

engaged in intentional efforts to hide and withhold from the public safety concerns expressed by its own officials and researchers linking the aforesaid drugs to increased heart risks.

22.  Upon information and belief, based on defendants' advertising and promotional activity with respect to the aforesaid products, and pre- and post-sale failure to warn, each injured plaintiff was prescribed the drugs by their physicians based on the belief the same was safe to use and was unlikely to subject them to serious side effects as a result of use of the products.

23.  Upon information and belief, the injured plaintiff MARGARET STEINHOFF ingested the drug Vioxx from October, 1999 to July, 2004, at the direction of her physicians and in accordance with the manufacturer's instructions.

24.  Upon information and belief, the injured plaintiff MARGARET STEINHOFF ingested Celebrex, in or about, 2004.

25.  By reason of the foregoing, the injured plaintiff sustained personal injury and great pain and suffering, and continued to sustain great pain and suffering for a lengthy period of time, and sustained great anxiety and fear of additional adverse medical consequences, and will continue to so suffer in the future.

26.  Upon information and belief, the injury sustained by the plaintiff is indivisible in nature, and was caused, contributed to and/or aggravated by ingestion of the defendants' products as aforesaid.

27.  By reason of injuries due to ingestion of the drugs as aforesaid, the injured plaintiff incurred or may be obligated to pay monies for medical expenses.

28.  The injuries sustained by the aforesaid plaintiff and the damages resulting therefrom were caused solely by the defendants' defective products complained of herein without any fault on the part of the plaintiffs contributing hereto.

29.  Plaintiff alleges that the limitations on liability set forth in CPLR § 1601 do not apply under the exemptions set forth in CPLR §§ 1602(5), 1602(7) and 1602(11).

30. In the event applicable, plaintiffs rely on the provisions of CPLR §214-c(4).

## AS AND FOR A FIRST CAUSE OF ACTION
## (NEGLIGENCE AND GROSS NEGLIGENCE)

31.  Plaintiff realleges and incorporates herein as if fully set forth herein the allegations in the preceding paragraphs 1 through 34 of this complaint.

32.  Each defendant knew or should have known with the exercise of reasonable care that its product is an unreasonably dangerous product and nevertheless promoted and placed said product into the stream of commerce.

33.  Prior to and during the time the plaintiffs ingested the product, the defendants knew or should have known that a significant portion of the users of the product would be subject to a significant risk and increased risk of serious side effects, including cardiovascular disease and stroke.

34.  Upon information and belief, defendants failed to carry out adequate investigation including, but not limited to, failing to adequately test the products.

35.  Defendants were further grossly negligent and evinced a reckless disregard for the safety of persons who would be using said product by downplaying, minimizing, and otherwise failing to warn the medical profession, the public in general and the plaintiff in particular about the serious and deadly side effects of the products, while at the same time promoting these drugs on the basis of minor alleged benefits and unsubstantiated or false claims as to efficacy for pain management.

36.  Upon information and belief, as a direct and proximate result of the negligence of the defendants, the injured plaintiffs were harmed and sustained the injuries as aforesaid due to ingesting the products over a period of time.

37.  As a result of the foregoing, the injured plaintiffs are entitled to compensatory damages and exemplary damages from defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
## (STRICT LIABILITY)

38.  Plaintiff incorporates by reference and realleges all preceding paragraphs 1 through 34 as if fully set forth herein and further alleges the following.

39.  At all times herein mentioned each product complained of herein was dangerous and defective, in that any benefit from said product was outweighed by the serious and deadly side effects of said drug.

40.  Defendants placed said products into the stream of commerce with reckless disregard for the public safety in that they did not carry out adequate testing, did not timely or adequately continue to test and monitor the safety of the drugs, or take other reasonable steps to assure the products were efficacious for the purpose for which they were intended without subjecting the user to significant and harmful side effects as aforesaid.

41.  Defendants are strictly liable for the harm the injured plaintiffs sustained as a result of ingesting the products as aforesaid.

42.  As a result of reckless disregard for the public welfare and welfare of plaintiffs in particular, each injured plaintiff is entitled to exemplary damages from defendants in addition to compensatory damages sustained as a result of defendants' conduct.

### AS AND FOR A THIRD CAUSE OF ACTION
### (FRAUDULENT AND NEGLIGENT MISREPRESENTATION
### AND FAILURE TO WARN)

43.  Plaintiff incorporates by reference and realleges all preceding paragraphs 1 through 34 as if fully set forth herein and further alleges the following.

44.  Beginning prior to and during the time the plaintiff herein ingested the drugs complained of, the defendants engaged in a strategy involving aggressively marketing and selling the aforesaid products by falsely misleading physicians and consumers as to the safety of their respective drugs, by promoting the drugs to the medical community and directly to the public based on unsubstantiated safety claims, and by failing to protect users from serious dangers which defendants knew or should have

known to result from use of said products.

45.    The products Vioxx, Bextra and Celebrex were unaccompanied by proper warnings regarding all possible adverse side effects and complications associated with its use, and the comparative severity, duration and extent of the risk with such use, and as to their respective products, defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the products so that no medical care provider would have prescribed, or no consumer would have used, the products had those facts been made known to such providers and consumers.

46.    The defendants have failed to perform or otherwise facilitate adequate testing in that such testing would have shown that the products posed serious and potentially life-threatening side effects and complications with respect to which full and proper warning accurately and fully reflecting the symptoms, risks, scope and severity should have been made to medical care providers, the FDA and the public, including the plaintiffs.

47.    The products were defective due to inadequate post-marketing warnings and/or instructions because, after defendants knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of the products, defendants failed to provide adequate warnings to medical care providers, the FDA and the consumer public, including plaintiffs, and continued to promote the products aggressively.

48.    Upon information and belief, defendants, through agents, employees and representatives, engaged in intentional efforts to hide and withhold from the public safety concerns expressed by their own officials and researchers linking the aforesaid drugs to increased heart risks as aforesaid.

49.    By use of affirmative misrepresentations and omissions as aforesaid, the defendants engaged in promotional or advertising programs that falsely and fraudulently sought to create the image and impression that the use of the aforesaid drugs was safe, known to be safe or had minimal risks to the public and the plaintiffs in particular.

50.  Upon information and belief, defendants understated, downplayed or withheld information concerning health hazards and risks associated with the drugs, as well as the lack of adequate testing and monitoring for safety.

51.  Defendants diluted any warnings on the products by representing that adverse events were not significant for persons likely to be the users of said drugs.

52.  As a direct and proximate result of the aforesaid conduct of the defendants, each injured plaintiff sustained the harm complained of herein.

53.  Upon information and belief, at the times relevant to this complaint, each defendant was in possession of information demonstrating serious side effects evidencing the increased risk the drugs posed to patients, or clearly should have been in possession of such information yet continued to market its drugs by providing false and misleading information with regard to safety as aforesaid, and, despite the same, and despite the fact that there was existing evidence said drugs were in fact dangerous, the defendants downplayed the health hazards and risks associated with the products and in fact deceived the medical community, individual physicians and public at large including potential users of the products by promoting the same as safe and effective.

54.  Upon information and belief, defendants placed profit concerns over and above the safety of the public.

55.  As a result of defendants' reckless disregard for the public welfare and welfare of plaintiffs in particular each of the injured plaintiffs is entitled to an award of exemplary damages from the defendants in addition to compensatory damages sustained as a result of each of the defendant's conduct.

## AS AND FOR A FOURTH AND SEPARATE CAUSE OF ACTION
### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

56.  Plaintiff incorporates by reference and realleges all preceding paragraphs 1 through 34 as if fully set forth herein and further alleges the following.

57.  Defendants expressly and impliedly warranted that their aforesaid drugs were safe when

used by patients for whom the drugs were not otherwise contraindicated, including the injured plaintiffs herein.

58. Defendants breached such express and implied warranties in that said drugs were not safe for the purpose for which intended.

59. As a direct and proximate result of the aforesaid breach of express and implied warranties, the injured plaintiff is entitled to an award of compensatory and to an award of exemplary damages, inasmuch as the breach was in reckless disregard of the public health and safety.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (DERIVATIVE SPOUSAL CLAIM, LOSS OF CONSORTIUM)

60. Plaintiff MICHAEL STEINHOFF, incorporates by reference and realleges paragraphs 1 through 34 as if fully set forth herein and further allege as the following.

61. At all times relevant to this complaint the aforesaid plaintiff was and continues to be a resident of the State of New York and was and continues to be lawfully married to and residing with the injured plaintiff MARGARET STEINHOFF.

62. By reason of the foregoing, MICHAEL STEINHOFF was deprived of the services and consortium of the injured plaintiff, including but not limited to companionship, affection, support and solace, and was caused to suffer a loss of enjoyment of life, all of which caused said plaintiff spouse to be damaged and entitled to judgment against each defendant.

63. By reason of the foregoing, MICHAEL STEINHOFF incurred and was damaged due to medical expenses and other expenses associated with the injured spouse complained of herein.

## RELIEF REQUESTED

WHEREFORE, the plaintiff demands judgment against the defendants, jointly and severally, as appropriate, on each cause of action as pled herein as follows:

(1) Award plaintiff MARGARET STEINHOFF compensatory damages in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction; and

(2)  Award plaintiff MARGARET STEINHOFF exemplary damages against defendants on the first through fifth causes of action;

(3)  Award plaintiff's spouse MICHAEL STEINHOFF compensatory damages on the sixth cause of action; and

(4)  Award plaintiff such other and further relief against the defendants as the Court deems just and proper under the circumstances, including the costs and disbursements of this action.

Dated:  August 2, 2006.

**LAW OFFICE OF RONALD R. BENJAMIN**
Attorneys for Plaintiffs
126 Riverside Drive, P. O. Box 607
Binghamton, New York 13902-0607
607/772-1442

By: _Ronald R. Be_____

RONALD R. BENJAMIN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

MARGARET STEINHOFF, *et ux.* MICHAEL
STEINHOFF,

                          Plaintiffs,

          -against-

PFIZER, INC., PHARMACIA CORPORATION,
a wholly-owned subsidiary of PFIZER, INC., and
PHARMACIA & UPJOHN COMPANY, a
wholly-owned subsidiary of PHARMACIA
CORPORATION, and MERCK & CO., INC.,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - x

No.: 111292/06

**ANSWER AND ~~JURY DEMAND~~
OF DEFENDANT MERCK &
CO., INC.**



FILED
SEP 25 2006
NEW YORK
COUNTY CLERK'S OFFICE

      Defendant Merck & Co., Inc. ("Merck") by its undersigned attorneys, answers the

Complaint ("Complaint") herein as follows:

      1.     Upon information and belief, admits the allegations contained in paragraph 1

of the Complaint.

      2.     The allegations contained in paragraph 2 of the Complaint are not directed

towards Merck and therefore no responsive pleading is required. Should a response be

deemed required, Merck denies knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in said paragraph except admits, upon

information and belief, that Pfizer, Inc. ("Pfizer") is a Delaware Corporation with its

principal place of business in New York.

      3.     The allegations contained in paragraph 3 of the Complaint are not directed

towards Merck and therefore no responsive pleading is required. Should a response be

NY 1088652_1.DOC

deemed required, Merck denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in said paragraph.

4.    The allegations contained in paragraph 4 of the Complaint are not directed towards Merck and therefore no responsive pleading is required.  Should a response be deemed required, Merck denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in said paragraph.

5.    Denies each and every allegation contained in paragraph 5 of the Complaint except admits that Merck is a New Jersey Corporation with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

6.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 6 of the Complaint except admits that Pfizer manufactured Celebrex and Bextra and that Pfizer marketed its products at certain times.

7.    Denies each and every allegation contained in paragraph 7 of the Complaint except admits that Merck manufactured, marketed and distributed the prescription medicine Vioxx® until it voluntary withdrew Vioxx from the worldwide market on September 30, 2004.

8.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations not directed toward Merck in paragraph 8 of the Complaint, and denies each and every allegation directed toward Merck contained in paragraph 8 of the Complaint except admits that the prescription medicine Vioxx reduces pain and inflammation and that the mechanism of action is believed to be due to

M008637886

inhibition of prostaglandin synthesis via inhibition of an enzyme known as cyclooxygenase-2 (COX-2).

9.    Denies each and every allegation contained in paragraph 9 of the Complaint.

10.    Denies each and every allegation contained in paragraph 10 of the Complaint except admits that the VIGOR study involving Vioxx exists and respectfully refers the Court to said study for its actual conclusions and full text.

11.    Denies each and every allegation contained in paragraph 11 of the Complaint except admits that Merck received a letter from Spencer Salis of DDMACs dated December 16, 1999, and respectfully refers the Court to the referenced letter for its actual language and full text.

12.    Denies each and every allegation contained in paragraph 12 of the Complaint except admits that Plaintiff purports to reference certain statements but avers that said statements are taken out of context.

13.    Denies each and every allegation contained in paragraph 13 of the Complaint except admits that the studies and article referenced exist, and respectfully refers the Court to said publications for their actual language and full text. Merck further admits that it is currently a member of the European League Against Rheumatism ("EULAR") and that it has been a sponsor of EULAR since 1999.

14.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations not directed toward Merck in paragraph 14 of the Complaint, and denies each and every allegation directed toward Merck contained in paragraph 14 of the Complaint and respectfully refers the Court to the referenced study for its actual language and full text.

M008637897

15.    Denies each and every allegation contained in paragraph 15 of the Complaint except admits the referenced article exists and respectfully refers the Court to said article for its actual language and full text.

16.    Denies each and every allegation contained in paragraph 16 of the Complaint.

17.    Denies each and every allegation contained in paragraph 17, including subparagraphs (a) through (f) of the Complaint except admits that Merck marketed the prescription medicine Vioxx, until Merck voluntarily withdrew Vioxx from the worldwide market on September 30, 2004, that the referenced study, Annual Report, 8-K filing, and press release exist and respectfully refers the Court to said documents for their actual language and full text and that Merck received a letter from Thomas W. Abrams of DDMAC in September 2001 and respectfully refers the Court to that letter for its actual language and full text.

18.    The allegations contained in paragraph 18 of the Complaint, including subparagraphs (a) through (i), are not directed towards Merck and therefore no responsive pleading is required.  Should a response be deemed required, Merck denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in said paragraph except admits that Pfizer marketed its products at certain times.

19.    Denies each and every allegation contained in paragraph 19 of the Complaint except admits that Merck marketed the prescription medicine Vioxx, that Pfizer marketed its products at certain times, and that Merck provides to the Physicians' Desk Reference a copy for publication of the FDA-approved prescribing information for Vioxx in effect at

M008637888

the time and respectfully refers the Court to the Physicians' Desk Reference for the actual language and full text of said prescribing information.

20.    Denies each and every allegation contained in paragraph 20 of the Complaint except admits that Merck marketed the prescription medicine Vioxx and that Pfizer marketed its products at certain times.

21.    Denies each and every allegation contained in paragraph 21 of the Complaint.

22.    Denies each and every allegation contained in paragraph 22 of the Complaint.

23.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 23 of the Complaint.

24.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 24 of the Complaint.

25.    Denies each and every allegation contained in paragraph 25 of the Complaint.

26.    Denies each and every allegation contained in paragraph 26 of the Complaint.

27.    Denies each and every allegation contained in paragraph 27 of the Complaint.

28.    Denies each and every allegation contained in paragraph 28 of the Complaint.

29.    The allegations contained in paragraph 29 of the Complaint are legal conclusions as to which no responsive pleading is required.  Should a response be deemed required, Merck denies each and every allegation contained in said paragraph.

30.    The allegations contained in paragraph 30 of the Complaint are legal conclusions as to which no responsive pleading is required.  Should a response be deemed required, Merck denies each and every allegation contained in said paragraph.

## RESPONSE TO "FIRST CAUSE OF ACTION
## (NEGLIGENCE AND GROSS NEGLIGENCE)"

31.    With respect to the allegations contained in paragraph 31 of the Complaint,

Merck repeats and realleges each and every admission, denial, averment, and statement

contained in paragraphs 1 through 30 of this Answer with the same force and effect as

though set forth here in full.

32.    Denies each and every allegation contained in paragraph 32 of the Complaint.

33.    Denies each and every allegation contained in paragraph 33 of the Complaint.

34.    Denies each and every allegation contained in paragraph 34 of the Complaint.

35.    Denies each and every allegation contained in paragraph 35 of the Complaint.

36.    Denies each and every allegation contained in paragraph 36 of the Complaint.

37.    Denies each and every allegation contained in paragraph 37 of the Complaint.

## RESPONSE TO "SECOND CAUSE OF ACTION
## (STRICT LIABILITY)"

38.    With respect to the allegations contained in paragraph 38 of the Complaint,

Merck repeats and realleges each and every admission, denial, averment, and statement

contained in paragraphs 1 through 37 of this Answer with the same force and effect as

though set forth here in full.

39.    Denies each and every allegation contained in paragraph 39 of the Complaint.

40.    Denies each and every allegation contained in paragraph 40 of the Complaint.

41.    Denies each and every allegation contained in paragraph 41 of the Complaint.

42.    Denies each and every allegation contained in paragraph 42 of the Complaint.

M008637890

## RESPONSE TO "THIRD CAUSE OF ACTION
## (FRAUDULENT AND NEGLIGENT MISREPRESENTATION AND FAILURE
## TO WARN)"

43.    With respect to the allegations contained in paragraph 43 of the Complaint,
Merck repeats and realleges each and every admission, denial, averment, and statement
contained in paragraphs 1 through 42 of this Answer with the same force and effect as
though set forth here in full.

44.    Denies each and every allegation contained in paragraph 44 of the Complaint.

45.    Denies each and every allegation contained in paragraph 45 of the Complaint.

46.    Denies each and every allegation contained in paragraph 46 of the Complaint.

47.    Denies each and every allegation contained in paragraph 47 of the Complaint.

48.    Denies each and every allegation contained in paragraph 48 of the Complaint.

49.    Denies each and every allegation contained in paragraph 49 of the Complaint.

50.    Denies each and every allegation contained in paragraph 50 of the Complaint.

51.    Denies each and every allegation contained in paragraph 51 of the Complaint.

52.    Denies each and every allegation contained in paragraph 52 of the Complaint.

53.    Denies each and every allegation contained in paragraph 53 of the Complaint.

54.    Denies each and every allegation contained in paragraph 54 of the Complaint.

55.    Denies each and every allegation contained in paragraph 55 of the Complaint.

## RESPONSE TO "FOURTH AND SEPARATE CAUSE OF ACTION
## (BREACH OF EXPRESS AND IMPLIED WARRANTIES)"

56.    With respect to the allegations contained in paragraph 56 of the Complaint,
Merck repeats and realleges each and every admission, denial, averment, and statement
contained in paragraphs 1 through 55 of this Answer with the same force and effect as
though set forth here in full.

M000637891

57.   Denies each and every allegation contained in paragraph 57 of the Complaint.

58.   Denies each and every allegation contained in paragraph 58 of the Complaint.

59.   Denies each and every allegation contained in paragraph 59 of the Complaint.

## RESPONSE TO "SIXTH CAUSE OF ACTION (DERIVATIVE SPOUSAL CLAIM, LOSS OF CONSORTIUM)"

60.   With respect to the allegations contained in paragraph 60 of the Complaint, Merck repeats and realleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 59 of this Answer with the same force and effect as though set forth here in full.

61.   Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 61 of the Complaint except, upon information and belief, admits that Margaret Steinhoff is a resident of the State of New York.

62.   Denies each and every allegation contained in paragraph 62 of the Complaint.

63.   Denies each and every allegation contained in paragraph 63 of the Complaint.

## RESPONSE TO "RELIEF REQUESTED"

64.   Plaintiffs' "Relief Requested" section of the Complaint is not an allegation of fact and therefore no responsive pleading is required.  Should a response be deemed required, Merck denies each and every allegation in the "Relief Requested" section of Plaintiffs' Complaint and denies that Plaintiffs are entitled to the relief requested.

## AS FOR A FIRST DEFENSE, MERCK ALLEGES:

65.   The claims of Plaintiffs may be time-barred, in whole or in part, under applicable statutes of limitations or statutes of repose, or are otherwise untimely.

M008637892

### AS FOR A SECOND
### DEFENSE, MERCK ALLEGES:

66.    The Complaint fails to state a claim upon which relief can be granted.

### AS FOR A THIRD
### DEFENSE, MERCK ALLEGES:

67.    The claims of Plaintiffs may be barred, in whole or in part, from recovery because they have made statements or taken actions that preclude them from asserting claims or constitute a waiver of their claims.

### AS FOR A FOURTH
### DEFENSE, MERCK ALLEGES:

68.    The claims of Plaintiffs may be barred, in whole or in part, from recovery because of the res judicata effect of prior judgments.

### AS FOR A FIFTH
### DEFENSE, MERCK ALLEGES:

69.    Each and every claim asserted or raised in the Complaint is barred by the doctrines of estoppel, waiver or statutory and regulatory compliance.

### AS FOR A SIXTH
### DEFENSE, MERCK ALLEGES:

70.    If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other intervening cause or causes.

### AS FOR A SEVENTH
### DEFENSE, MERCK ALLEGES:

71.    To the extent that Plaintiffs asserts claims based on Merck's adherence to and compliance with applicable federal laws, regulations and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

**AS FOR AN EIGHTH**
**DEFENSE, MERCK ALLEGES:**

72.   To the extent that Plaintiffs assert claims based upon an alleged failure by Merck to warn Plaintiffs directly of alleged dangers associated with the use of Vioxx, such claims are barred under the learned intermediary doctrine because Merck has discharged its duty to warn in its warning to the prescribing physician.

**AS FOR A NINTH**
**DEFENSE, MERCK ALLEGES:**

73.   If Plaintiffs have sustained injuries or losses as alleged in the Complaint, such injuries or losses were only so sustained after Plaintiffs knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any drug or pharmaceutical preparation manufactured or distributed by Merck or other manufacturer.

**AS FOR A TENTH**
**DEFENSE, MERCK ALLEGES:**

74.   If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Merck and over whom Merck had no control and for whom Merck may not be held accountable.

**AS FOR AN ELEVENTH**
**DEFENSE, MERCK ALLEGES:**

75.   If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were proximately caused by Plaintiff's misuse or abuse of Vioxx.

## AS FOR A TWELFTH
## DEFENSE, MERCK ALLEGES:

76.  If Plaintiffs have sustained injuries or losses as alleged in the Complaint, such

injuries or losses resulted from Plaintiff's pre-existing and unrelated medical, genetic and

environmental conditions, diseases, or illnesses, subsequent medical conditions or natural

courses of conditions for which this defendant is not responsible.

## AS FOR A THIRTEENTH
## DEFENSE, MERCK ALLEGES:

77.  To the extent Plaintiffs have settled or will in the future settle with any person

or entity with respect to the injuries asserted in the Complaint, Merck's liability, if any,

should be reduced accordingly.

## AS FOR A FOURTEENTH
## DEFENSE, MERCK ALLEGES:

78.  To the extend Plaintiffs are seeking recovery for benefits entitled to be

received or actually received from any other source for injuries alleged in the Complaint,

such benefits are not recoverable in this action.

## AS FOR A FIFTEENTH
## DEFENSE, MERCK ALLEGES:

79.  Plaintiffs' claims of fraud and misrepresentation are barred by reason of

Plaintiffs' failure to allege the circumstances constituting fraud with particularity, as

required by Sections 3013 and 3016(b) of the New York Civil Practice Law and Rules.

## AS FOR A SIXTEENTH
## DEFENSE, MERCK ALLEGES:

80.  Plaintiffs' claims are barred, in whole or in part, under the applicable state law

because Vioxx was subject to and received pre-market approval by the Food and Drug

Administration under 52 Stat. 1040, 21 U.S.C. § 301.

### AS FOR A SEVENTEENTH
### DEFENSE, MERCK ALLEGES:

81.    Plaintiffs' claims are barred in whole or in part by the First Amendment.

### AS FOR AN EIGHTEENTH
### DEFENSE, MERCK ALLEGES:

82.    Plaintiffs' claims are barred in whole or in part because the product at issue

was made in accordance with the state of the art at the time it was manufactured.

### AS FOR A NINETEENTH
### DEFENSE, MERCK ALLEGES:

83.    There is no practical or technically feasible alternative design that would have

reduced the alleged risk without substantially impairing the reasonably anticipated and

intended function of Vioxx.

### AS FOR A TWENTIETH
### DEFENSE, MERCK ALLEGES:

84.    The claims of Plaintiffs may be barred, in whole or in part, from recovery

because, in this or other courts, they have brought actions and have received judgments

on parts of some or all claims asserted herein.

### AS FOR A TWENTY-FIRST
### DEFENSE, MERCK ALLEGES:

85.    The claims of Plaintiffs may be barred, in whole or in part, from recovery, on

the ground that the claims asserted herein have been submitted to arbitration, and a

binding decision has been rendered.

### AS FOR A TWENTY-SECOND
### DEFENSE, MERCK ALLEGES:

86.    The claims of Plaintiffs may be barred, in whole or in part, from recovery by

release as to their claims.

### AS FOR A TWENTY-THIRD
### DEFENSE, MERCK ALLEGES:

87.    The claims of Plaintiffs and the purported class members may be barred, in whole and in part, by the doctrine of laches.

### AS FOR A TWENTY-FOURTH
### DEFENSE, MERCK ALLEGES:

88.    The claims of Plaintiffs are barred, in whole or in part, by their failure to mitigate damages.

### AS FOR A TWENTY-FIFTH
### DEFENSE, MERCK ALLEGES:

89.    To the extent there were any risks associated with the use of the product which is the subject matter of this action that Merck knew or should have known and which gave rise to a duty to warn, Merck at all times discharged such duty through appropriate and adequate warnings in accordance with federal and governing state laws.

### AS FOR A TWENTY-SIXTH
### DEFENSE, MERCK ALLEGES:

90.    The claims of Plaintiffs may be barred, in whole or in part, from recovery, due to spoliation of evidence.

### AS FOR A TWENTY-SEVENTH
### DEFENSE, MERCK ALLEGES:

91.    The claims of Plaintiffs may be barred, in whole or in part, by the governing state laws.

### AS FOR A TWENTY-EIGHTH
### DEFENSE, MERCK ALLEGES:

92.    Any conduct allegedly causing liability on the part of Merck is not a substantial cause or factor of any potential or actual injury or damage, if any.

M008637897

## AS FOR A TWENTY-NINTH
### DEFENSE, MERCK ALLEGES:

93.   Plaintiffs have not sustained any injury or damages compensable at law.

## AS FOR A THIRTIETH
### DEFENSE, MERCK ALLEGES:

94.   To the extent that Plaintiffs seek punitive damages for the conduct which

allegedly caused injuries asserted in the Complaint, such an award would also, if granted,

violate Merck's state and federal constitutional rights.

## AS FOR A THIRTY-FIRST
### DEFENSE, MERCK ALLEGES:

95.   To the extent that Plaintiffs seek punitive damages for an alleged act or

omission of Merck, no act or omission was malicious, willful, wanton, reckless, or

grossly negligent and, therefore, any award of punitive damages is barred.

## AS FOR A THIRTY-SECOND
### DEFENSE, MERCK ALLEGES:

96.   Plaintiffs' demand for punitive damages is barred because Vioxx and its

labeling was subject to and received pre-market approval by the FDA under 52 Stat.

1040, 21 U.S.C. § 301.

## AS FOR A THIRTY-THIRD
### DEFENSE, MERCK ALLEGES:

97.   Plaintiffs' claims are barred in whole or in part under comment k to Section

402A of the Restatement (Second) of Torts.

## AS FOR A THIRTY-FOURTH
### DEFENSE, MERCK ALLEGES:

98.   Plaintiffs' claims are barred in whole or in part because Merck provided

adequate "directions or warnings" as to the use of Vioxx and any other drug or

M008637898

pharmaceutical preparation Plaintiffs allege to have taken within the meaning of comment j to Section 402A of the Restatement (Second) of Torts.

## AS FOR A THIRTY-FIFTH DEFENSE, MERCK ALLEGES:

99.   Plaintiffs' claims are barred under Section 4, et. seq., of the Restatement (Third) of Torts:  Products Liability.

## AS FOR A THIRTY-SIXTH DEFENSE, MERCK ALLEGES:

100.  Plaintiffs' claims are barred in whole or in part because Vioxx "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts:  Product Liability.

## AS FOR A THIRTY-SEVENTH DEFENSE, MERCK ALLEGES:

101.  Plaintiffs' claims are barred by the doctrine of contributory negligence.

## AS FOR A THIRTY-EIGHTH DEFENSE, MERCK ALLEGES:

102.  This case is more appropriately brought in a different venue.

## AS FOR A THIRTY-NINTH DEFENSE, MERCK ALLEGES:

103.  Defendants are improperly joined in this action.

## AS FOR A FORTIETH DEFENSE, MERCK ALLEGES:

104.  Plaintiffs' claim for negligent misrepresentation as it relates to representations made to plaintiff or the public are barred for failure to allege with particularity the misrepresentations, pursuant to the December 27, 2005 order of Hon. Shirley W. Kornreich in *Sabatino v. Pfizer, Inc.*, 101572/2005 (New York County), to which Plaintiff was a party.

## AS FOR A FORTY-FIRST
## DEFENSE, MERCK ALLEGES:

105.  Plaintiffs' claim for breach of express warranty as it relates to warranties made to plaintiff are barred for failure to allege with particularity the warranties or plaintiffs' knowledge and reliance, pursuant to the December 27, 2005 order of Hon. Shirley W. Kornreich in *Sabatino v. Pfizer, Inc.*, 101572/2005 (New York County), to which Plaintiffs were parties.


Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Merck to determine all of its legal, contractual and equitable rights, Merck reserves the right to amend and supplement the averments of its answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery of this action.

Merck will rely on all defenses that may become available during discovery or trial.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiffs' Complaint with prejudice and awarding Merck its reasonable costs and disbursements, together with such and other and further relief that the Court may deem just and proper.

M008637000

## JURY DEMAND

Merck demands a trial by jury as to all issues so triable.

DATED:     New York, New York
           September 20, 2006

                              Respectfully submitted,

                              HUGHES HUBBARD & REED LLP


                              By: _Vilia B. Hayes_____
                                  Theodore V. H. Mayer
                                  Vilia B. Hayes
                                  Robb W. Patryk
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              (212) 837-6000

                              *Attorneys for Defendant Merck & Co., Inc.*

COUNTY CLERK'S INDEX
No. 111292/06

# Supreme Court

COUNTY OF NEW YORK

MARGARET STEINHOFF, *et ux.* MICHAEL STEINHOFF,

Plaintiffs,

-against-

PFIZER, INC., PHARMACIA CORPORATION, a wholly-owned subsidiary of PFIZER, INC., and PHARMACIA & UPJOHN COMPANY, a wholly-owned subsidiary of PHARMACIA CORPORATION, and MERCK & CO., INC.,

Defendants.

FILED

SEP 2 5 2006

NEW YORK
COUNTY CLERK'S OFFICE

## ORIGINAL

ANSWER AND JURY DEMAND OF
DEFENDANT MERCK & CO., INC.

**Hughes Hubbard & Reed** LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000

Attorneys for Defendant
MERCK & CO., INC.

By: _____

Vilia B. Hayes, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

MARGARET STEINHOFF, *et ux.* MICHAEL
STEINHOFF,

                           Plaintiffs,     **No.: 111292/06**

         -against-

PFIZER, INC., PHARMACIA CORPORATION,
a wholly-owned subsidiary of PFIZER, INC., and
PHARMACIA & UPJOHN COMPANY, a
wholly-owned subsidiary of PHARMACIA
CORPORATION, and MERCK & CO., INC.,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED**

**NOV 1 4 2006**

NEW YORK
COUNTY CLERK'S OFFICE

**FIRST SET OF INTERROGATORIES**
**TO PLAINTIFFS MARGARET STEINHOFF AND MICHAEL STEINHOFF**
**PROPOUNDED BY DEFENDANT MERCK & CO., INC.**

       Defendant Merck & Co., Inc. ("Merck") propounds the following

interrogatories to plaintiffs Margaret Steinhoff and Michael Steinhoff pursuant to

Sections 3130-3133 of the Civil Practice Law and Rules. Plaintiffs are requested to

respond separately and in writing within twenty (20) days.

       The following Definitions and Instructions are applicable and are

expressly incorporated into these Interrogatories:

## DEFINITIONS AND INSTRUCTIONS

      1.     "Merck & Co., Inc." and "Merck" means any of the subsidiaries,

divisions, departments, affiliates, predecessors, successors or offices of the defendant and

by whatever name known, and all present and former officers, directors, employees,

NY 1082923_1.DOC

trustees, principals, agents, and representatives of Merck, as well as any person acting or purporting to act on its behalf.

2. "Plaintiff" or "Plaintiffs" or "you" or "your" or "yourself" means Plaintiffs Margaret Steinhoff and Michael Steinhoff, any of their agents, representatives or assigns, as well as any person acting or purporting to act on their behalf.

3. "Vioxx®" means the prescription drug with the chemical name rofecoxib which is the subject of this lawsuit.

4. As used throughout, "written communication" or "document" means all written or graphic matter, however produced, or reproduced, of every kind and description in the actual or constructive possession, custody or control of plaintiffs' counsel, including without limitation all writings, drawings, graphs, charts, photographs, sound tapes or recordings, announcements, bulletins, press releases, papers, books, accounts, letters, microfilm, magnetic tape, magnetic disks, magnetic strips, optical character recognition characters, punched paper tapes, microfiche, punched cards, telegrams, voices, statements, account recommendations, notes, minutes, inter-office memoranda, reports, studies, contracts, ledgers, books of account, vouchers, hotel charges, cost sheets, stenographer notebooks, calendars, appointment books, diaries, time sheets or logs, computer printouts, computer files, data compilations from which information can be obtained or can be translated through detection devices into reasonably usable form. The term "document" shall also include:

a. A copy of the original document when the original document is not in the possession, custody or control of plaintiffs, plaintiffs' counsel or other agent; and

NY 1082923_1.DOC

b. Every copy of a document (a) where such copy is not an identical duplicate of the original, or (b) where such copy contains notations not contained on the original or other copies.

5.    The term "communications" means all occasions on which information was conveyed from one person to another (a) by means of a document, or (b) verbally, including by means of a telephone or other mechanical or electronic device.

6.    As used herein, the term "person" shall include, wherever appropriate, not only a natural person but also a corporation, partnership, unincorporated association or other association of persons.  However, a request for identification of a person having knowledge of facts or custody of a document shall be construed to refer to a natural person.

7.    A response to a request contained in these Interrogatories to "identify" a document shall be sufficient if the individual having custody of the document is identified by name and address, and the document is identified or described by (a) the date, (b) the author, (c) the addressee(s), (d) the type of document (i.e., letter, memorandum, note, etc.), (e) the subject matter, and (f) the number of pages.  In lieu of identifying a document, you may attach a copy of such document or documents to your answers to these Interrogatories.

8.    A request to "identify" a person shall be construed as a request for (a) the full name of such person, (b) all other names which such person has used for him or herself, (c) the social security number of such person, (d) the date and place of birth of such person, (e) the present employer of such person, (f) the present office or business address and business telephone number of such person, (g) the present residential address

NY 1082923_1.DOC

and residential telephone number of such person, (h) the nature the relationship between the plaintiffs and such person, (i) the dates of commencement and termination of that relationship, and (j) the reason for the termination of that relationship. If you do not know or cannot determine the present address, telephone number or present employer of any person referred to in your answers to these Interrogatories, please give the last known address, telephone number or employer.

9.    The term "describe in detail" means: (a) describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law, (b) state for each such fact the (1) time, (2) place, and (3) manner of said fact, (c) identify all persons involved, and (d) identify all documents that support, contradict, refer, relate, or mention such facts.

10.    If you object to any Interrogatory or any subpart thereof on the grounds that it calls for disclosure of information which you claim is privileged, then answer such Interrogatory or subpart as follows: (a) furnish all information and facts called for by such Interrogatory or subpart which you do not claim is privileged, and (b) for each communication, recommendation, fact or advice which you claim is privileged, state the basis for your claim of privilege.

11.    Throughout these interrogatories, including the definition of terms, words used in the masculine gender include the feminine; and words used in the singular include the plural. Where the word "or" appears herein, the meaning intended is the logical inclusion "or" i.e., "and/or." Where the word "include" or "including" appears, the meaning intended is "including, but not limited to."

NY 1082923_1.DOC

12.    When requested to "state each fact" or the "facts upon which you rely" relating to any allegation, fact, legal theory, contention or denial, please furnish a full and complete statement of the factual basis of any such allegation, fact, legal theory, contention or denial, the reason or rationale that such facts so relate or pertain and how such facts so relate or pertain.

## INTERROGATORIES

### INTERROGATORY 1:

Please identify yourself, including your full name; all other names you have used or by which you have been known and the period of time during which you were known by such other names; your address; the date and place of your birth; your social security number and, if different, your driver's license number.

ANSWER:

### INTERROGATORY NO. 2:

Please describe your educational background, including the name and address of each grade school, high school, college or university, trade school, or graduate school attended; the inclusive dates of attendance; list any majors(s), minor(s), and the degree(s) received.

ANSWER:

NY 1082923_1.DOC

INTERROGATORY NO. 3:

Please describe your employment history since age 18, identifying each employer (or period of self-employment), the inclusive dates of each employment, your job title, a description of your duties for each employment, the amount or rate of compensation for each employment, and your reason for leaving each employment.

ANSWER:

INTERROGATORY NO. 4:

Describe in detail all injuries, diseases, illnesses, disabilities or other medical conditions experienced by you since January 1, 1995. (See definition 9.)

ANSWER:

INTERROGATORY NO. 5:

Please identify by name, address, telephone number, and specialty, if applicable, each and every physician or other healthcare provider whom you consulted, or who treated or examined you for any reason whatsoever since January 1, 1995, and describe in detail the reasons you sought treatment or consultation, the date(s) of the treatment or consultation, all tests performed, the diagnosis, and the medication prescribed. (See definitions 8 & 9.)

ANSWER:

NY 1082923_1.DOC

INTERROGATORY NO. 6:

Describe in detail your medication history, other than Vioxx, including a list of all medications (prescription and non-prescription), and drugs (legal or illegal) that you used since January 1, 1995, the reason each medicine, medication, and/or drug was used, and for each medication or drug, identify its brand or generic name; if it was prescribed, the name and address of the person prescribing it; the name and address of the pharmacy from which such medication was purchased; the dates on which you took the drug, the amounts and dosage of each drug taken, and the dates and reasons for which you stopped taking it; and the nature of any reaction, including any allergic reaction or side effect experienced by you. (<u>See</u> definition 9.)

ANSWER:

INTERROGATORY NO. 7:

Please identify each and every healthcare provider who prescribed Vioxx or provided samples of Vioxx to you. For each healthcare provider, state the condition for which Vioxx was prescribed or was provided, the dates such prescriptions were issued or such samples were provided, and the dosages. (<u>See</u> definition 8.)

ANSWER:

**INTERROGATORY NO. 8:**

Set forth the names and complete addresses of all pharmacies where you have had prescriptions for Vioxx filled. To the extent not previously provided, provide authorizations for the release of those records in the form attached hereto.

ANSWER:


**INTERROGATORY NO. 9:**

State the dates on which you started and stopped treatment with Vioxx, the dosage you were taking, and whether any physician increased or decreased your original prescription at any time. If you, on your own, changed your dosage of Vioxx or the frequency of the dosage at any time from the dosage recommended by the prescribing physician, state the date on which you made each change, and the actual amount of Vioxx consumed by you each day.

ANSWER:


**INTERROGATORY NO. 10:**

State the dates on which you started and stopped treatment with Celebrex® and/or Bextra®, the dosage you were taking, and whether any physician increased or decreased your original prescription at any time. If you, on your own, changed your dosage of Celebrex® and/or Bextra®, or the frequency of the dosage at any time from the dosage recommended by the prescribing physician, state the date on which

you made each change, and the actual amount of Celebrex® and/or Bextra® consumed
by you each day.

ANSWER:

INTERROGATORY NO. 11:

Describe in detail each injury, illness, disease or condition (i.e., sign or
symptom, whether mental, physical or emotional) that you claim to have resulted from
your use of Vioxx; the dates of onset for each injury, illness, disease or condition; and set
forth the name and address of all physicians or other healthcare providers with whom you
consulted or from whom you sought treatment for these conditions.  (See definition 8.)

ANSWER:

INTERROGATORY NO. 12:

For each injury identified in Interrogatory No. 10, please identify all
healthcare providers and experts who will support the claim that Vioxx caused such
injury, the substance of such opinions, and any facts or documents upon which such
opinions are based.  Attach to your interrogatory answers a copy of all written reports
supporting this claim.  (See definition 7.)

ANSWER:

NY 1082923_1.DOC

INTERROGATORY NO. 13:

Identify any member of your family who has experienced cardiovascular events, including heart attacks and strokes, or any other medical condition(s) similar to the condition(s) experienced by you, and, for each person so identified, describe in detail the nature of such medical condition(s). (See definitions 8 & 9.)

ANSWER:

INTERROGATORY NO. 14:

Separately itemize all expenses and losses that you claim to have incurred or expect to incur as a result of the injuries you claim that you suffered from taking Vioxx, including the dollar amount of hospital bills and identity of the hospital; medical bills with the names and addresses of the persons requesting payment; nursing bills with the names and addresses of the persons requesting payment; loss of earnings including the names and addresses of employers; and any other similar expenses and damages, specifying type, amount and person to whom such amount is due.

ANSWER:

INTERROGATORY NO. 15:

If you have ever been given disability ratings for accident, health or life insurance, please identify the healthcare provider that assigned each such rating, the date

on which you were given each disability rating, and the reason for which you were given each disability rating.

ANSWER:


INTERROGATORY NO. 16:

State whether you have undergone any additional physical examinations, including examinations in connection with employment or any application for employment or for life insurance since January 1, 1995, and if so, state the date of any such examination, who conducted the examination, on whose behalf the examination was made, whether there is a report of such physical examination, and if any such physical examination resulted in action being taken on your behalf or against you, please describe such action.

ANSWER:


NY 1082923_1.DOC

INTERROGATORY NO. 17:

Identify each carrier or plan that at any time has provided you with or has rejected your application for life, medical, health, disability and/or compensation coverage, either individually or as a member of an insured family, including group insurance coverage under policies of insurance issued to or on behalf of a spouse or other family member, and as part of your response, include any applicable policy or identification number.  If the application was rejected, please state:

     (a) The date of rejection;

     (b) The type of insurance for which you applied;

     (c) The name and address of the insurance company with which the application was filed; and

     (d) The reason given for the rejection.

ANSWER:

INTERROGATORY NO. 18:

Describe in detail every written claim or demand for compensation you have made, including, but not limited to, pre-lawsuit demands to settle, lawsuits, workers' compensation claims, social security disability claims, and/or claims for veteran's benefits including the nature of the proceeding; the date, time, and place of the event for which damages were sought; the name, address, and telephone number of each person against whom the claim was made; the name, address, and telephone number of any attorney; and whether the claim has been resolved or is pending; the caption and case

NY 1082923_1.DOC

number of the action; the court or tribunal in which the action was pending and the date it

was filed; and the disposition of the action.  (See definition 9.)

       ANSWER:

**INTERROGATORY NO. 19:**

       Identify all facts upon which you rely to support your contention that

Vioxx caused or contributed to your alleged injuries.  Identify any other factors that you

believe may have contributed to your injuries.

       ANSWER:

**INTERROGATORY NO. 20:**

       Since you have claimed injuries resulting from the ingestion of Vioxx and

Celebrex®, please identify what you claim is the relative culpability of each defendant

and the facts upon which you rely to hold both defendants jointly liable pursuant to

C.P.L.R. Article 16.

       ANSWER:

INTERROGATORY NO. 21:

         Describe in detail each and every fact upon which you base any claim that Vioxx was defective and/or dangerous.  (See definition 9.)

         ANSWER:

INTERROGATORY NO. 22:

         For each instance that you claim that a doctor prescribed any Vioxx for you, state whether the prescribing doctor gave you any oral or written warning about the potential side effects of the drug or stated any precautions, and if so, state in detail and completely the substance of the warning(s).  Identify any documents containing or referring to such warnings or precautions.

         ANSWER:

INTERROGATORY NO. 23:

         Describe in detail any warning you claim was defective and/or inadequate concerning Vioxx; and how the warning was inadequate in light of medical knowledge concerning Vioxx at the time it was prescribed to you; and a verbatim statement of the warning that you or your experts contend is an adequate warning, how it would have prevented your injuries or damages, whether such warning should have been written or oral, and when and to whom it should have been provided.  (See definition 9.)

         ANSWER:

M007438435

INTERROGATORY NO. 24:

Set forth with particularity each and every act or omission upon which you base any claim that Merck was negligent in the promotion, design, manufacture, testing, labeling, advertising, warning, marketing and sale of Vioxx.  Identify what you contend in paragraph 9 of the Complaint would have been the "proper testing" of this medication. State the name and title of each person who performed an alleged negligent act or omission.

ANSWER:

INTERROGATORY NO. 25:

Please identify all communications by you or any member of your family, whether oral, written or electronic (including communications as part of internet "chat rooms" or e-mail groups), with doctors, Merck representatives, or other persons not including your counsel, regarding Vioxx, your injuries, or this case.

ANSWER:

NY 1082923_1.DOC

INTERROGATORY NO. 26:

Describe any and all contacts that you had with any Vioxx-related advertising, marketing and promotion.  List all advertisements, including television, radio, and print, with which you came in contact, including the date on which you were exposed to such advertising.

ANSWER:

INTERROGATORY NO. 27:

Please describe in detail each alleged misrepresentation or omission relative to Vioxx that you contend was made to you and the general consuming public. For each statement, identify the maker of the statement, the person(s) to whom the statement was made, the circumstances under which such misrepresentation was made, the date(s) upon which such misrepresentation was made or published, and the publication, advertisement, press release, TV ad or other vehicle through which such misrepresentation was disseminated.  For each statement that you contend was fraudulently made, please state the basis for your contention that these statements were made with reckless disregard to their truth.

ANSWER:

NY 1082923_1.DOC

M007438437

INTERROGATORY NO. 28:

        Please state each fact upon which you base your claim that Merck breached an express or implied warranty of fitness and/or merchantability, and identify all witnesses and documents on which you will rely in support of your claim.

        ANSWER:

INTERROGATORY NO. 29:

        Identify all information demonstrating that knowledge of the "serious side effects" of Vioxx that you contend in paragraphs 22 and 33 of the Complaint was in Defendant's possession and was not disclosed adequately to the medical community, individual physicians and the public.

        ANSWER:

INTERROGATORY NO. 30:

        Please state each and every fact and circumstance upon which you base any claim for exemplary damages, including the identity of any witnesses who will testify in support of your allegations of fraud, ill-will, recklessness, gross negligence, and willful or intentional disregard of plaintiffs' individual rights. Please provide a full description of the acts or omissions that you allege demonstrate such conduct and any documents upon which you rely in support of said allegations.

M007438438

ANSWER:


INTERROGATORY NO. 31:

Provide the factual basis and a computation for each category of damages you claim and identify all witnesses who will testify in support of each category of damages and all documents upon which you will rely in support of each category of damages.

ANSWER:


INTERROGATORY NO. 32:

Do you rely on any statutes, codes, standards, regulations, rules, texts, medical journals, medical articles, or treatises to establish any alleged defect or unreasonably dangerous condition of Vioxx?  If so, identify each such document and the appropriate section or page number on which you rely.

ANSWER:

INTERROGATORY NO. 33:

Please state each fact upon which you base your claim that Merck violated its duty under strict liability, and identify all witnesses and documents you will rely on in support of this claim.

ANSWER:

Dated:   New York, New York
         November 10, 2006

                                    HUGHES HUBBARD & REED LLP

                                    By: _Vilia B. Hayes_____
                                        Vilia B. Hayes
                                    Attorneys for Defendant
                                    Merck & Co., Inc.
                                    One Battery Park Plaza
                                    New York, New York 10004
                                    (212) 837-6000

TO:   Ronald R. Benjamin, Esq.
      Law Office of Ronald R. Benjamin
      126 Riverside Drive, P.O. Box 607
      Binghamton, New York 13902-0607

      Christopher M. Strongosky, Esq.
      DLA Piper US LLP
      1251 Avenue of the Americas
      New York, New York 10020-1104

NY 1082923_1.DOC

# Supreme Court

COUNTY OF NEW YORK

COUNTY CLERK'S INDEX
No. 111292/06

MARGARET STEINHOFF, *et ux.* MICHAEL STEINHOFF,

Plaintiffs,

-against-

PFIZER, INC., PHARMACIA CORPORATION, a wholly-
owned subsidiary of PFIZER, INC. and PHARMACIA &
UPJOHN COMPANY, a wholly-owned subsidiary of
PHARMACIA CORPORATION, and MERCK & CO.,
INC.,

Defendants.

ORIGINAL

COMBINED DEMANDS

**Hughes Hubbard & Reed** LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212 837-6000

Attorneys for Defendant
MERCK & CO., INC.

By:

Vilia B. Hayes, Esq.

02/29/2008  19:44    212-403-5663          DLA PIPER US LLP                PAGE  07/40

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x

IN RE: NEW YORK BEXTRA AND CELEBREX
PRODUCT LIABILITY LITIGATION

: Index No. 762000/06

002676

------------------------------------------------------------

MARGARET STEINHOFF, et ux. MICHA~~EL~~  dex No. 111292/06
STEINHOFF,

ELECTRONIC FILING     Plaintiff~~s~~      MAR 0 6 2008

          -against-          NEW YORK
                             COUNTY CLERK'S OFFICE

PFIZER INC., PHARMACIA CORPORATION, a wholly-
owned subsidiary of PFIZER INC., and PHARMACIA &
UPJOHN COMPANY, a wholly-owned subsidiary of
PHARMACIA CORPORATION, and MERCK & CO.,
INC.,

                    Defendants.

: STIPULATION OF
: DISMISSAL WITH
: PREJUDICE AGAINST
: PFIZER DEFENDANTS

------------------------------------------------------------ x

IT IS HEREBY STIPULATED AND AGREED, by and between the parties to the above-

entitled action through their respective attorneys, that whereas no party hereto is an infant,

incompetent person for whom a committee has been appointed or conservatee and no person not

a party has an interest in the subject matter of this action, all claims asserted against Pfizer Inc.,

Pharmacia Corporation, and Pharmacia & Upjohn Company ("Pfizer Defendants") in the

Complaint in the above-entitled action are dismissed with prejudice and without costs to any of

the parties as against the other.  This Stipulation may be filed without further notice with the

Clerk of the Court.  A facsimile copy of this Stipulation shall have the same effect as the

original.

Dated:  New York, New York
        March 5    , 2008

LAW OFFICE OF RONALD R. BENJAMIN          DLA PIPER US LLP

By: _____                      By: _____
    Ronald R. Benjamin                         Christopher M. Strongosky
    126 Riverside Drive                         Tiffany L. Christian
    P.O. Box 607                                1251 Avenue of the Americas
    Binghamton, New York 13902-0607             New York, NY 10020-1104
    607-772-1442                                212-335-4500

*Attorneys for Plaintiffs*                   *Attorneys for Pfizer Defendants*


HUGHES HUBBARD & REED LLP

By: _____
    Vilia B. Hayes
    One Battery Park Plaza
    New York, NY 10004-1482
    212-837-6000

*Attorneys for Merck & Co., Inc.*

Clerk of the Court.  A facsimile copy of this Stipulation shall have the same effect as the

original.

Dated:   New York, New York
         March 4    , 2008

LAW OFFICE OF RONALD R. BENJAMIN               DLA PIPER US LLP

By: _____                 By: _____
    Ronald R. Benjamin                             Christopher M. Strongosky
    126 Riverside Drive                            Tiffany L. Christian
    P.O. Box 607                                   1251 Avenue of the Americas
    Binghamton, New York 13902-0607               New York, NY 10020-1104
    607-772-1442                                   212-335-4500

*Attorneys for Plaintiffs*                     *Attorneys for Pfizer Defendants*


HUGHES HUBBARD & REED LLP

By: *Vilia B. Hayes*
    Vilia B. Hayes
    One Battery Park Plaza
    New York, NY 10004-1482
    212-837-6000

*Attorneys for Merck & Co., Inc.*